## HOSLETON v. DICKINSON ET AL.

1. **Equitable Jurisdiction: CONVEYANCE.** Where the plaintiff commenced an action for a balance upon a promissory note given for the purchase of land, and the defendant averred false representations in the sale of land, and prayed for the cancellation of the note to the extent of the damages, and other relief, *held*, that the case was cognizable in equity.

2. **Conveyance: "MORE OR LESS" IN A DEED.** The presence in a deed of the words "more or less," after the statement of the number of acres therein, does not imply that the purchaser takes the risk of the quantity; but a slight variation from the amount stated, with this qualification, will not afford the purchaser ground for relief.

Hosleton v. Dickinson.

*Appeal from Clinton District Court.*

THURSDAY, JUNE 5.

ON the 11th day of January, 1873, the plaintiff conveyed a certain tract of timber land to the defendants. The deed contained the usual covenants of general warranty, and described the land as containing "thirty acres, more or less." The purchase money agreed to be paid was nine hundred dollars. Three hundred dollars were paid before the conveyance was made, and the defendants executed to the plaintiff their promissory note for three hundred dollars, payable in one year, with interest at ten per cent per annum, and also another note for the like amount, dated at the same time and payable in two years, with interest at ten per cent per annum.

This action was commenced by the plaintiff on the 16th day of October, 1874, to recover a balance alleged to be due upon the first above described note.

The defendants filed an answer and cross-petition in which they averred in substance that the plaintiff was guilty of fraud in pointing out the boundaries of said land previous to the purchase, and that the land actually conveyed was but eighteen and eighty one-hundredths acres, and that if the tract had included the land within the boundaries pointed out by plaintiff it would have contained twenty-five and forty one-hundredths acres only; that the land was chiefly valuable for the timber standing and growing thereon, and that if it had been bounded, located, and of the number of acres as represented by plaintiff it would have been worth nine hundred dollars, but that said eighteen and eighty one-hundredths acres as it was actually located was not worth to exceed four hundred and seventy-five dollars. They averred that the plaintiff knew said representations to be false, and that defendants relied thereon to their damage in the sum of four hundred and twenty-five dollars. And they further averred that the plaintiff was still the owner of the last above

described note, which was wholly unpaid. They prayed a decree requiring the plaintiff to produce said two promissory notes in court for cancellation, to the extent of the damages sustained by the defendants, and for other relief.

On the 16th day of January, 1876, the defendants amended their answer and cross-bill by alleging that at the time of the purchase it was agreed that the land should contain thirty acres, and that defendants should pay therefor the sum of thirty dollars per acre, and that defendants had no knowledge, other than that derived from the plaintiff, of the quantity of said land, and purchased the same upon the faith and belief that the plaintiff's knowledge of the number of acres it so contained was correct, and that the plaintiff and defendants were mutually mistaken as to the number of acres said land contained at the time of the purchase aforesaid; that subsequent to filing the original answer the defendants paid the last above described note to another party, who claimed to be the owner thereof, before due and in good faith, and without notice. They prayed that an abatement be made from the purchase money for said land equal to the deficiency in acres at the contract price per acre, and that an amount equal to the balance due upon the note sued upon be set off against the same, and that plaintiff be decreed to pay the defendants the balance thereof.

There were replies filed by the plaintiff putting in issue the material allegations of the cross-petition and the amendments thereto.

The proper order was made for a trial upon written evidence, and such trial was had by the court. There was a judgment rendered for the plaintiff for the balance due upon the note on which suit was brought. Defendants appeal.

*Kirke W. Wheeler*, for appellants.

*Merrell & Howat*, for appellee.

ROTHROCK, J.—I.   The court below found that there were

Hosleton v. Dickinson.

no fraudulent representations made by the plaintiff to the 1. EQUITABLE jurisdiction: conveyance. defendants at the time of, or before, the conveyance of the land, and that the sale was not made by the acre, as alleged in the amendment to the cross-petition. An examination of the evidence satisfies us that these findings are correct. There is no evidence tending to show that the plaintiff knew that the land was less in quantity than thirty acres. On the contrary all the facts and circumstances in the case lead to the conclusion that he believed there were thirty acres, or very nearly that quantity, in the tract conveyed.

The deed does not indicate that the sale was by the acre, and, although the evidence shows that the number of acres was in contemplation by the parties, we think it was a gross sale of what was supposed to be thirty acres of land for nine hundred dollars.

The court below further found as follows: "I am not satisfied that there was any mistake, but in the view I take of the law I have not deemed it necessary to investigate this point so closely as I should under other circumstances. My view of the law is that this must be considered as a law action, and determined by the rules governing them, and that it cannot be considered an equitable action, so as to be brought within the rules laid down in *Wilcox v. Iowa Wesleyan University*, 32 Iowa, 367."

In other words, the court held that the cause of action set forth in the cross-petition was essentially one at law, and that it must be considered as an action at law for damages, although entitled in equity, and that under the authority of *Holmes v. Clark*, 10 Iowa, 423, and other cases, the defendants could not recover damages at law for a mere mistake; a court of equity being the only forum wherein such relief can be granted.

The case of *Holmes v. Clark* was an action at law to recover damages for false and fraudulent representations in the sale of land. It was held that to entitle the plaintiff to recover

he must show by competent evidence "that the representations were false and fraudulent within the knowledge of the party making them, and that they were made intentionally to deceive, and induce the completion of the purchase," and that no recovery could be had if it appeared that the representations were made by mistake merely. But the court says: "It is true, in a transaction of this kind, the plaintiff may have been equally surprised by a mistake or by a fraud. If so, he had a like easy and full remedy—not of this description, in a court of law, to be sure, but in a court of equity, whose peculiar province it is to rectify mistakes, and grant the appropriate relief incident to the same. And this could have been done, according to our conception of the true spirit of the Code, without leaving the court, by simply changing the statement in the petition so as to address the equity side of the court."

The defendants in this cause entitled their pleading a cross-bill, and prayed for a decree. The parties and the court all seem to have understood the issues to be tried as equitable, because no motion was made by the plaintiff for the correction of the cross-bill, and the cause was ordered to be tried upon written evidence as in equity. If there was an error in the kind of proceedings adopted it was waived by a failure to move for its correction at the proper time. Code, § 2519.

We think under these circumstances, and in view of the ruling in *Holmes v. Clark, supra,* the defendants were entitled to have the cause tried by the rules and usages of equity, and not by the strict rules applicable to law actions.

But we may go further and properly hold that the relief sought by the cross-bill and amendment thereto, while in its remote sense is compensation in damages for a mistake, yet as the pleadings are framed they present grounds for equitable relief. It was alleged that the plaintiff was the owner of the note given for the last payment on the land, as well as the note in suit, and it is prayed that he be decreed to produce both of said notes in court for cancellation to the extent of the dam-

Hosleton v. Dickinson.

.ages sustained by defendants. If the defendants had purchased this land, and after the removal of the timber had discovered such a mistake as would entitle them to equitable relief, and had commenced an action for the cancellation of the notes to the extent of the injury caused by the mistake, their action would have been of equitable cognizance. It would, it is true, be indirectly recovering damages for the mistake, but this would not determine the jurisdiction. It cannot be said that there can be no relief in equity, because by the removal of the timber there cannot be an entire rescission of the contract.

Now the cross-petition of the defendants presents precisely the same issue as would be presented if they were plaintiffs seeking the cancellation of the notes and an abatement of purchase money to that· extent. The fact that afterward they paid the note last maturing to a *bona fide* indorsee would not oust a court of equity of jurisdiction. Having once obtained jurisdiction upon issues properly presented, the jurisdiction would be retained and the rights of the parties determined, even though the relief ultimately should be a mere money judgment.

II. Having determined, then, that such issues were presented as were properly cognizable in equity, we come to inquire whether the defendants are entitled to relief upon the ground of mistake. The land conveyed was described in the deed as follows: "Thirty acres, more or less, off of the north side of lot No. 1, of section 6, in township 80 north, range No. 4 east; said thirty acres, more or less, lying north of the big slough, running east and west through said lot No. 1, thereby leaving the south line of said thirty acres, more or less, running east and west with said big slough, commonly called the Martin Slough."

2. CONVEY-ANCE: "more or less" in a deed.

It appears from an actual measurement of the lands made after the conveyance, and after the defendants had removed a large quantity of the timber therefrom, that it contained eighteen acres and eighty one-hundredths. We think the evi-

dence fairly shows that the plaintiff was mistaken in the quantity of the land, and that he supposed it contained thirty acres or closely approximating thereto. This mistake may have partly originated from the fact, which we consider well established in the evidence, that he went upon the land after the defendants commenced cutting timber, but before the conveyance was made, and pointed out the east boundary line incorrectly. If the east line had been where he supposed it was, and where he pointed it out, there would have been seven and sixty one-hundredths acres more in the tract.

The plaintiff entered the land and it was patented to him by the United States in the year 1850. The patent describes the lot as forty-two and seventy one-hundredths acres. In 1854 the plaintiff conveyed to one Russell that part of the land lying south of the slough, and in the deed described it as containing twelve acres, more or less. If these descriptions had been correct there would have been thirty acres conveyed by the deed to defendants. When the defendants were at the plaintiff's house negotiating for the land the plaintiff exhibited to them his patent therefor. He testified upon the question of quantity as follows: "They asked me how much I had. I told them I had forty-two acres and over in the first place, but I had sold a piece off to Russell on the south side of the slough, and I had never had it surveyed, and did not know how much there was of it. I called it twelve acres, and made a deed for more or less. The balance of the land I had. I told them I had been paying taxes on thirty acres; did not know how much I had. It is a fact that I have been paying taxes on thirty acres or over. I never paid less than on thirty acres."

With this information as to quantity the defendants examined the land. They measured an acre, with an average of the timber upon it, and counted the trees and estimated "how much it would make to the acre."

In a few days after the bargain was concluded the parties met at the office of Keorgan Orndorf, a justice of the peace, and the conveyance was made. Orndorf prepared the deed

and described the land as thirty acres. The plaintiff objected to the description, because he did not know whether there were thirty acres or not. Orndorf then wrote the description, which is the one contained in the deed, and all the parties agreed thereto. The plaintiff then stated that he had sold the south part to Russell and he did not know how much that contained, and did not want to warrant any quantity. Another reason given by the plaintiff why he did not ·want to warrant thirty acres was that the lot was bounded in part by the river, and that some portion thereof was washed away. Notwithstanding these facts, we think it is apparent that all the parties believed there were about thirty acres in the tract, and that none of them supposed that it contained but eighteen and eighty one-hundredths acres.

. We have, then, to determine what are the rights of the parties. The sale was in gross and not by the acre. The parties believed the tract contained about thirty acres. They were mutually mistaken in the quantity to the extent of more than one-third of the land. The deed described the land as thirty acres, more or less. Does this designation of the land as more or less than the acres named preclude all inquiry into the mistake and bar the defendants of any relief?

We have to say that we think not. In *Belknap v. Sealey*, 14 N. Y., 143, the land in question was situated in the city of Brooklyn. In consideration of the gross sum of fourteen thousand dollars, of which one thousand was paid down, the defendant agreed to convey the land to the plaintiff, describing it as "the premises conveyed to him by Samuel T. Roberts," by deed dated nine months previous. The deed of Roberts contained a definite description by metes and bounds, and stated the quantity to be "about nine acres, more or less," excepting a certain parcel of one acre and six perches. The quantity, in fact, was only about half as much as the deed asserted. The defendant was guilty of no fraud, and it did not appear that he made any representations as

to the quantity except the exhibition of Roberts' deed, and of a diagram made by himself, or his agent, which had upon it a memorandum stating thus: "The deed calls for nine acres, less one acre and six perches sold."

The action was by the purchaser to recover the one thousand dollars purchase money which he had paid, and to rescind the contract. The court held that the plaintiff was entitled to relief. The opinion is based upon the principle that the words "more or less," in stating quantity in a deed, can have no application where the difference between the real and supposed quantity is so great as necessarily to imply a mutual mistake, which goes to the essence of the contract; that the words "more or less" are intended to cover a reasonable excess or deficit, and that if the difference be very great both parties act under an obvious mistake, which it is the duty of a court of equity to correct. The opinion discusses and criticises the cases of *Marvin v. Bennett*, 8 Paige, 312; *Veeder v. Fonda*, 3 Id., 94, and *Morris Canal Co. v. Emmett*, 9 Id., 168, cited by counsel for appellee in the case at bar.

In further support of the doctrine announced in *Belknap v. Seeley*, see Kerr on Fraud and Mistake, 65, where it is said: "The presence of the words 'more or less' in a contract for the sale or a deed of conveyance of land, after a statement of the quantity of acres therein, does not import a special engagement that the purchaser takes the risk of the quantity. The words must be taken to cover a reasonable excess or deficiency. If it turn out that the quantity falls considerably short of what it was represented to be the court will relieve the purchaser from payment for the deficiency, but a slight variation does not afford a ground of relief."

We have examined the authorities, English and American, cited by the learned author in support of the rule and find them to be in full accord with the text.

Applying this rule, then, to the case at bar it is apparent that the mistake was such an one as entered into the very essence of the contract, and that if the number of acres actually

Hosleton v. Dickinson.

contained in the tract had been known the contract never would have been entered into by the defendants. If they had known, when they were estimating the timber upon the average acre, that they were required to pay nine hundred dollars for a little more than eighteen such average acres it is incredible that they would have made the purchase. But as the rule does not embrace a reasonable excess or deficiency, and as the plaintiff expressly stated to the defendants that the river had washed away some of the land, and that was one reason why the words "more or less" were inserted in the deed, no relief should be granted for the deficiency which occurred from that cause. We have the original plat and field notes of the survey of the land made after the deficiency was discovered. It appears therefrom that the land washed away since the original survey was three and twenty-two one-hundredths acres. The whole deficiency was eleven and twenty one-hundredths acres. Deducting the three and twenty-two one-hundredths acres would leave a deficiency from other causes of about eight acres, which, at thirty dollars per acre, amounts to two hundred and forty dollars. This amount should be abated from the contract price as of the time the notes were executed. The amount, so far as necessary, should be set off against the note in suit, and the defendants should have judgment for the residue. In other words the estimate should be upon the basis of twenty-two acres, at thirty dollars per acre, with interest at ten per cent per annum upon such of the purchase money as was not paid when the contract was made. The cause will be reversed and remanded for a decree in harmony with this opinion.

REVERSED.