## AVERY, SPANGLER & CO. v. CHAPMAN.

1. **False Represtations as to another's Responsibility: LIABILITY OF MAKER.** In an action for damages alleged to have been sustained by reason of the defendant's having falsely represented the financial condition of another, a recovery cannot be had unless it is shown, not only that the representations were false, but that the defendant knew them to be false at the time they were made. It is not sufficient to show merely that defendant did not know them to be true.

2. **Instruction: ERROR WITHOUT PREJUDICE.** The fact that an erroneous instruction was given on the trial is no ground for reversal, where it appears from the whole case that appellant could not have been prejudiced thereby.

3. **Practice:** INTERPRETATION OF LETTERS IN EVIDENCE. Where letters which had passed between the parties were in evidence, and were in plain language, requiring no interpretation, and the jury had all the collateral facts, the determination of their meaning and import was properly left to the jury.

*Appeal from Guthrie District Court.*

WEDNESDAY, DECEMBER 5.

THIS is an action at law by which the plaintiffs seek to recover damages of the defendant for fraudulently representing to the plaintiffs the financial condition of one Hutley, whereby plaintiffs were induced to extend credit to Hutley to their injury, There was a trial by jury, which resulted in a verdict for the defendant. A motion for a new trial was overruled, and judgment was rendered upon the verdict. Plaintiffs appeal.

*Sims & Caswell*, for appellants.

*C. S. Fogg*, for appellee.

ROTHROCK, J.—I. The plaintiffs are grain merchants at Walnut, Iowa. The defendant is a banker at Stuart.

On the twenty-first day of August, 1878, one of the plaintiffs addressed a letter to the defendant, of which the following is a copy: "Jonathan Hutley bought several cars of corn from us, which we will ship to-day. How is he; all right? Please answer by return.

"Yours respectfully,
"J. C. SPANGLER."

The letter was answered on the same day as follows: "In my opinion Jonathan Hutley is all right, and will pay for all grain he buys as soon as it is on track. He has a good account with me.

"Yours truly,
"E. G. CHAPMAN."

On the day these letters were written, a person whom the plaintffs supposed to be Hutley appeared at Walnut, and the plaintiffs sold him two carloads of corn. They held the corn until they received the above letter from the defendant. When the letter was received, the corn was shipped, and it was paid for, as we understand the evidence, by a draft drawn by defendant. It appears that at that time there was deposited with defendant some $450 or $500 to the credit of Hutley. It turned out afterwards that the person who appeared at Walnut and made the contract with the plaintiffs was not Hutley, but that he claimed to be Hutley's agent. At the time of the purchase of these carloads of corn, the person claiming to be Hutley's agent made arrangements for the purchase of other grain of plaintiffs, to be delivered in the future; and between that time and the twenty-eighth of August the plaintiffs shipped to Hutley several carloads of corn and wheat. Hutley, or some one representing him, sent to them in payment for the shipment certain drafts on Culver & Co., commission merchants of Chicago. These drafts were protested for non-payment, and the plaintiffs thereby lost some $1,300.

It is charged in the petition, in substance, that the plaintiffs were induced by the letter of the defendant to ship the grain to Hutley, to the amount in value of $1,500; that the defendant well knew, at the time of writing the said letter, that Hutley was not able to pay for said grain, and was not fit to be trusted therewith on credit, and that the said Hutley was, at the time of making said purchases, and still is, wholly worthless and irresponsible pecuniarily, "and was at the time of the writing of the letter, as aforesaid, by said Chapman, and known to him to be so worthless and irresponsible; that, by reason of said false and fraudulent representations of the defendant, the plaintiffs have been damaged in the sum of fourteen hundred dollars."

It will be seen that the defendant was by the petition charged with liability because of false and fraudulent representations as to the financial character and responsibility of

Hutley. The court gave the jury the following, among other instructions:

"9. Before the plaintiffs can recover a verdict for anything in this case, you must find from a fair preponderance of the evidence that they have proved substantially the most material allegations of their petition, to-wit: that the defendant wrote and sent to J. C. Spangler the letter introduced in evidence as having been written and sent by the defendant to said Spangler; that the defendant wrote and sent said letter with the intent and design to induce the plaintiffs to sell grain on credit to the said Hutley; that the representations made by said letter were false and fraudulent within the knowledge of the defendant, and that they were made intentionally to deceive, and induce the sale of the grain mentioned to said Hutley on credit. In other words, to maintain an action for damages for a false representation and fraud, three circumstances must combine: first, it must appear from the evidence that the representations were contrary to the fact; second, that the party making them knew them to be contrary to the fact at the time they were made; and third, that it was the false representations which gave rise to the contracting of the other party. And, of course, before you can find for plaintiffs, you must find, in addition to what is above stated, that the plaintiffs did by reason of the said representations in said letter sell the grain mentioned in plaintiffs' petition, or some part of the grain mentioned therein, to said Hutley on credit; that they have not been paid therefor; that said Hutley has not sufficient means or property in this part of the country subject to execution to make the amount due from him to the plaintiffs for said grain. If you do so find, you must find for the plaintiffs. But if you fail so to find, you must find for the defendant."

Counsel for appellant insists that this instruction is erroneous. He claims that it was not necessary to prove that the defendant knew that the representations were false when they were made, but that if the representations were false, and if

made recklessly and not knowing them to be true, and having no reason to believe them to be true, the defendant is liable. And appellants asked certain instructions to the jury to this effect.

We think the court did not err in giving the instruction above set out, and refusing the instructions asked; and we need not enter into a discussion of this question. The measure of proof required by the instruction given has been the law of the state since the decision in *Holmes v. Clark*, 10 Iowa, 423. That case has been repeatedly followed without deviation by this court. The case of *McKown v. Furgason*, 47 Iowa, 636, cited by counsel for appellants, does not contain any doctrine inconsistent with the previous cases involving this question. In that case it was held that an instruction "that the representations made by the defendant were false, and that they were known to be false by the defendant at the time they were made," should have been given to the jury.

Another very cogent reason why the instruction should have been given in this case is, that the defendant did not make the representations as importing knowledge, but as an opinion, which was but his judgment of the financial standing of Hutley.

II. This instruction is also objected to because it required the jury to find that Hutley had not sufficient property in that part of the country subject to execution to make the amount due from him to the plaintiffs for the grain.

The objection is founded upon the fact that the court used the present tense in writing the instruction, so that it literally instructed the jury that it must be shown that Hutley was insolvent at the time of the trial. This statement in the instruction, if it be conceded to be erroneous, was not prejudicial to the plaintiffs. The insolvency of Hutley was not disputed upon the trial. Indeed, it is not at all certain that there is or ever was any such person in existence. No witness testified that he ever saw him. The whole record shows

that some one appeared in Stuart and Walnut, who claimed to be an agent of Hutley, to buy grain. He defrauded the plaintiffs of some $1,300, and even if the jury were instructed erroneously that the plaintiffs must show that Hutley was insolvent at the time of the trial, it was without prejudice, because, under the facts, no other finding could have been made.

III. The court refused to put a construction upon the letters which passed between the parties, and instructed the jury that they were to take them and consider them the same as if the parties had met and spoken to each other in the same language as that contained in the letters. There was no error in this. The letters were in plain language; they required no interpretation; and the jury were put in possession of all the facts necessary to determine their full meaning and import.

IV. It is objected that the instructions of the court on testimony offered by the plaintiffs to prove the general custom among bankers and grain dealers in western Iowa, and other rulings upon the admission of evidence, were erroneous. We think otherwise. We fail to discover anything in the record authorizing proof of any general custom, and all the rulings of the court pending the introduction of the evidence appear to us to be correct.

AFFIRMED.